JAMES L. WEBSTER *v.* STATE OF INDIANA.

[No. 272S24. Filed November 1, 1973. Rehearing denied December 26, 1973.]

*Robert G. Mann*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

GIVAN, J.*—Appellant was charged by affidavit in three counts: 1) inflicting injury in the commission of robbery; 2) assault and battery with intent to kill; 3) violation of the 1935 Firearm's Act. Trial by jury resulted in a finding of guilty as to counts 1 and 2. Appellant was sentenced to life imprisonment in the Indiana State Prison.

The record reveals the following facts:

On November 20, 1970, Gerald F. Leamon was employed as a clerk at the Family Liquor Store in Indianapolis. That evening he was in the liquor store alone when either the appellant or an accomplice entered and asked for a bottle of whiskey. As Leamon rang up the sale on the cash register, the robber ordered him to keep his hands down, produced a pistol and shot him twice in the stomach. Leamon was then forced into a back room, and two more shots were fired into his body. The robber then removed Leamon's billfold containing $44. He also emptied the cash register which contained $38.

While the holdup was in progress, Geneva Gladson was walking past the store with her six year old son when she noticed a black over yellow Ford automobile parked in front of

---

*This case was reassigned from another Justice to the writer of this opinion on June 27, 1973.

the liquor store. She noticed that its occupant was watching her in the rear view mirror. She made a mental note of the license number. As she passed the store, she could see a man in the store. She walked on past and entered a fenced-in yard. She then saw the driver of the automobile go into the store. She then crossed the street and hid behind a car where she could watch the store. She saw two men come out, get in the black over yellow Ford and drive away.

Mrs. Gladson then crossed the street and entered the store where she found Leamon coming out of the back room, bleeding profusely. She then called the police to report the robbery.

From Mrs. Gladson's description of the car and the license number police were able to locate the vehicle, which had been abandoned shortly after the robbery. Appellant's fingerprints were found on the door handle on the passenger side.

Police obtained a warrant and arrested appellant where he was living with one Barbara Harper.

Upon questioning, appellant denied having a gun. However, a gun, which was later identified as the one used in the robbery, was found by the officers in a search of the premises.

After being advised of his constitutional rights, the appellant signed a statement which was admitted in evidence at the trial wherein he admitted taking part in the robbery, but claimed that he only drove the getaway car, and that the robbery and shooting was done by one Romus Fields.

Appellant's brother, Irving James Webster, testified that the robbery was committed by him and the appellant; that he was the one who drove the getaway car, and that it was his brother, the appellant, who committed the robbery and shot Mr. Leamon.

At the trial Mr. Leamon identified the appellant as his assailant; however, it was established that at a prior hearing Mr. Leamon had identified Romus Fields as his assailant.

In this state of double confusion as to the details of the robbery, the appellant called the attorney of Irving James

Webster as a witness and asked him if he had had conversations with the prosecuting attorney and police officers as to any promises of leniency for his client if his client would testify against the appellant. The trial court refused to permit the attorney to answer these questions on the ground that it was a violation of the attorney-client privilege. However, the information sought was not a conversation between the attorney and his client. It was a conversation between the attorney and a third party at the request of the client. Such conversation cannot be considered confidential. C. McCORMICK, LAW OF EVIDENCE (2d ed. 1972), § 91, p. 188. However, the error in refusing to permit the attorney to answer the question was harmless. Although the jury was faced with a double set of facts, one based upon the appellant's confession, the other on the testimony of his brother, all of the evidence pointed to the guilt of the appellant either as an accomplice or as the principal in the perpetration of the crimes charged. In this situation the jury could totally disregard the testimony of appellant's brother and still have sufficient evidence upon which to base appellant's conviction. An accessory to a crime may be charged as if he were a principal. IC 35-1-29-1, BURNS IND. ANN. STAT., (1956), § 9-102.

The trial court is, therefore, affirmed.

Arterburn, C.J. and Hunter, J., concur; Prentice, J., concurs in result; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DeBRULER, J.—The testimony of the accomplice, Irving Webster, and that of the storekeeper constituted the State's main evidence which singled out the accused as the one who had in fact shot the storekeeper in the course of this robbery. The accomplice denied on cross-examination that he had received assurances from the State that he would benefit by his cooperative stance. The defense then called the accomplice's lawyer to the stand. This was done in an attempt to establish

whether the State had procured the accomplice's testimony by promises of prosecutorial leniency in the disposition of the pending charge against him for his admitted participation in the crime for which the accused was being tried, and thus to impeach his credibility. I agree with the majority that under the circumstances of this case the trial court committed error when he prevented the defense from questioning the lawyer for this purpose. I do not, however, agree with the majority in its further conclusion that this error was harmless.

As pointed out by the majority, the storekeeper's identification was of questionable persuasive force, since he had identified another as his assailant prior to trial. If then, Irving Webster's bias and interest had been shown by proof of promises of leniency, the jury might well have chosen to disbelieve him and then concluded that all of the State's evidence failed to show, beyond a reasonable doubt, that the accused had inflicted injury, and thereupon arrived at a different decision. In my opinion the trial court error was not without prejudice to the substantial rights of the accused. *Harvey* v. *State* (1971), 256 Ind. 473, 269 N. E. 2d 759; *Adams* v. *State* (1946), 224 Ind. 472, 69 N. E. 2d 21; IC 1971, 35-1-47-9, being Burns § 9-2320.

The State, in support of its harmless error contention cites IC 1971, 35-1-29-1, being Burns § 9-102, which reads as follows:

"Every person who shall aid or abet in the commission of a felony, or who shall counsel, encourage, hire, command, or otherwise procure a felony to be committed, may be charged by indictment, or affidavit, tried and convicted in the same manner as if he were a principal, either before or after the principal offender is charged, indicted or convicted; and, upon such conviction he shall suffer the same punishment and penalties as are prescribed by law for the punishment of the principal."

It is the theory of the State, adopted by the majority opinion, that even if the jury had chosen to disbelieve the evidence presented which tended to prove the accused had actually inflicted the wound, there is still ample evidence, in the form

of the accused's own confession, in which he admits to driving the getaway car for those who actually committed the robbery and inflicted the wound, and that such evidence alone would still be sufficient to support the jury's verdict, since it would be sufficient to show his guilt as an accessory to the crime of inflicting the injury during the robbery. This contention would be valid, and would constitute a valid basis for the determination that the exclusion of the disputed evidence was harmless error if, and *only if,* the jury had been instructed on the concept of accessory. In this case the jury received no instruction covering Burns § 9-102, *supra,* or the concept of accessory. The choice of the State, not to rely upon the accessory concept at trial, should in my opinion make it inappropriate for this Court to rely upon such concept on appeal, either in reviewing the sufficiency of the evidence, or in determining whether a particular error at trial was harmless.

. This trial, as it must have been viewed by the jury, did not call upon it to determine any elements other than those contained in the charges which were, in the case of the charge of inflicting an injury in the commission of robbery, that the accused did, in the course of a robbery, shoot and wound the storekeeper. The main evidence of the State, the charges themselves, as well as the legal instructions to the jury, were all specifically calculated to focus the attention of the jury upon the elements of the offense as charging appellant as a principal and not as an accessory. The appellant is entitled to a jury trial upon the issue of whether his connection with the main offense was of such a nature as to constitute aiding and abetting or assisting. This Court should not review a case and determine for any purpose that the evidence is sufficient to show an accused guilty as an accessory, until the merits of that issue have been fairly tried and determined in the court below. This Court should accept the case on appeal as it was tried below. The majority views it as though the State had asked for and obtained a jury instruction defining the concept of accessory. This is appellate error in my view.

Finally, I would point out, that I do not consider my position to be one of extreme technicality or of splitting of legal hairs. Substantial rights of the accused are directly affected by our application of the concept of accessory. One can easily imagine a case in which the connection of the accused with the prinipal crime is more attenuated than that which exists in this case where the evidence tends to show that the accused drove the getaway car. Events which show an aiding, abetting or assistance by the accused may have been shown by the evidence to have occurred hours before the crime and at a place far distant from the scene of the crime. If the case is tried, as this one was, in such a manner as to focus attention upon the time and place of the crime and no instruction is given defining accessory, there is no assurance that the jury determined the earlier events to have occurred beyond a reasonable doubt, or that those events duly found to have occurred beyond a reasonable doubt constituted aiding, abetting or assisting in the commission of the offense. Surely this Court should not review such a case upon the basis that the evidence of prior events supports the verdict of the jury. It is clearly unreasonable to conclude in this hypothetical case, as well as in the actual case at bar, that the events shown by the evidence which tend only to show the defendant guilty as an accessory, support the jury's verdict that he was guilty as a principal.

NOTE.—Reported in 302 N. E. 2d 763.