**George and Betty LORENZ,**
**Plaintiffs-Appellees,**
**Cross-Appellants,**

v.

**VALLEY FORGE INSURANCE COM-**
**PANY, Defendant-Appellant,**
**Cross-Appellee.**

**Nos. 86–1140, 86–1167.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 20, 1986.

Decided March 30, 1987.

Zacarias R. Chacon, Crotty & Hoyne, Chicago, Ill., for defendant-appellant, cross-appellee.

Paul A. Leonard, Jr., Goldsmith, Goodman, Ball & Van Bokkelen, P.C., Highland, Ind., for plaintiffs-appellees, cross-appellants.

Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

This is a diversity action, tried before a federal magistrate pursuant to 28 U.S.C. § 636(c). The original case ended in a mistrial when it became necessary for the plaintiffs' attorney to testify in the case. After the second trial, the jury found that the defendant, Valley Forge Insurance Company ("Valley Forge"), had denied plaintiffs', George and Betty Lorenz ("Lorenzes"), insurance claim in bad faith. Judgment was entered against Valley Forge for $9,494.90 in compensatory damages [1] and $250,000 in punitive damages. On appeal the defendants allege (1) that the district court improperly allowed the jury to consider privileged communications, (2) that the evidence was insufficient to support an award of punitive damages, and (3) that the reference of the case to a United States Magistrate should have been vacated. We reverse and remand for the reasons which follow.

## I.

On May 25, 1981, a fire destroyed a building originally owned by the Lorenzes which had been sold to Joseph and Pamela Singleton in 1978 pursuant to a land-sale contract. The Singletons insured the property with Valley Forge and the policy named the Lorenzes as "additional insureds" to cover the unpaid balance of the land-sale contract. After the fire, both the Lorenzes and the Singletons filed claims with Valley Forge. Valley Forge investigated the loss and decided to reject the Singletons' claim based on arson. Since the policy itself was valid, and the Lorenzes were named as "additional insureds," the suspected arson would not excuse Val-

---

1. The jury awarded $19,573.13 in compensatory damages but the magistrate granted a remittitur since only $9,494.90 in damages was supported by the evidence.

ley Forge from paying the Lorenzes. We will not detail the facts which preceded the filing of this suit, but after ten months without payment of their claim, the Lorenzes filed suit in federal court, two months before the particular statute of limitations would have run. The complaint alleged that Valley Forge refused to pay the Lorenzes an amount due under the insurance contract (Count I) and further alleged that Valley Forge had acted in bad faith (Count II).

To support the allegations contained in Count II, the Lorenzes wanted to demonstrate that Valley Forge had continued to act in bad faith after the lawsuit began. Here, the facts get rather complicated, but it is necessary to detail the procedural chronology in order to explore the attorney-client privilege question. The Lorenzes' sought to show that even through the trial, Valley Forge had failed to pay the amount due under the contract, Count I of the complaint. To counter the allegations of post-filing failure to pay, Valley Forge offered the testimony of its former attorney, John McInerney, to show that it had offered to settle the Lorenzes' claim after the suit was filed. The Lorenzes opposed the admission of any evidence of settlement discussions and countered that the offer to settle the compensatory claim (Count I) was improperly "packaged" with the offer to settle the punitive damages claim (Count II). Thus, the Lorenzes argued that rather than countering the allegation of post-filing failure to pay, the settlement offer itself was made in bad faith. In response to this further allegation, Valley Forge argued that the decision to "package" the compensatory and punitive damages claims had originated with the Lorenzes' attorney. The plaintiffs then sought discovery of allegedly privileged memoranda between Valley Forge and its former attorneys, evaluating the Lorenzes' claim. The Lorenzes contended that if the settlement offer were to be admitted as evidence to counter allegations of failure to pay, it was then necessary to examine the basis of the settlement offer to determine whether Valley Forge had offered to settle in good faith. The magistrate allowed discovery,

finding that Valley Forge had waived the attorney-client privilege by voluntarily injecting the issue of its good faith in the settlement negotiations into the case and by listing its former attorney as a witness in the pretrial order.

## II.

Before we address the attorney-client privilege issue, we need to address Valley Forge's contention that the reference of this case to a United States magistrate was void *ab intitio* under our ruling in *Hill v. Jenkins*, 603 F.2d 1256 (7th Cir. 1979). In *Hill*, we held that a case could not be referred to a magistrate in the absence of consent of the parties unless local rules were adopted to permit such reference. *Hill* and its progeny deal with non-consensual reference pursuant to 28 U.S.C. § 636(b). In contrast, this case was referred to a magistrate pursuant to consent of the parties. 28 U.S.C. § 636(c). The rule announced in *Hill* simply has no application to this case. Moreover, we have previously recognized the constitutionality of a reference under 28 U.S.C. § 636(c). (*See Adams v. Heckler*, 794 F.2d 303, 306 (7th Cir.1986) and cases cited therein.) Valley Forge further contends that the reference to the magistrate should have been vacated once the plaintiffs were allowed to amend their complaint to request $10,000,-000 in punitive damages. The original complaint sought $150,000 in punitive damages. We agree with the magistrate that this is not the type of extraordinary circumstance which should allow a party to withdraw its consent to have the case tried by a magistrate.

### ATTORNEY–CLIENT PRIVILEGE

Because the basis of our jurisdiction is diversity, we apply the Indiana state law of privilege. Fed.R.Evid. 501. The attorney-client privilege protects disclosure of information made to an attorney for the purpose of seeking legal advice. *Colman v. Heidenreich*, 269 Ind. 419, 381 N.E.2d 866 (1978); *Thomas v. State*, 251 Ind. 546, 242 N.E.2d 919 (1969). The basis of the privi-

lege is to encourage full and open conversation between a client and an attorney, (*Colman*, 381 N.E.2d at 868), and is broad enough to encompass advice given by an attorney to the client. *Green v. IRS*, 556 F.Supp. 79 (D.C.Ind.1982), *aff'd*, 734 F.2d 18 (7th Cir.1984). The privilege, however, can be waived by the client, either explicitly or by implication. *See, e.g., Key v. State*, 235 Ind. 172, 132 N.E.2d 143 (1956). Implicit disclosure can occur when a holder partially discloses a confidential communication (*see, e.g., Lindsey v. State*, 485 N.E.2d 102 (Ind.1985)) or when a holder relies on a legal claim or defense, the truthful resolution of which will require examining confidential communications. *See, e.g., United States v. Mierzwicki*, 500 F.Supp. 1331 (Dist.Ct.Md.1980).

■ The magistrate found that Valley Forge had waived its attorney-client privilege by voluntarily injecting its good faith in the settlement negotiations as a material issue in the case.[2] The magistrate found that it was necessary to examine confidential communications to determine whether the settlement offer had been made in good faith. Valley Forge wished to use the settlement negotiations to counter the Lorenzes' allegations of post-filing bad faith. To waive the attorney-client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case. Most often, this occurs through the use of an affirmative defense. *See, e.g., United States v. Exxon*, 94 F.R.D. 246 (Dist.Ct.1981) (good faith reliance on government regulations); *United States v. Mierzwicki*, 500 F.Supp. 1331 (Dist.Ct.Md. 1980) (reliance on advice of attorney); *Hearn v. Rhay*, 68 F.R.D. 574 (E.D.Wash. 1975) (qualified immunity). It is the nature of an affirmative defense to raise a "matter outside the scope of plaintiff's *prima facie* case." 2A J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 8.19[1] (2d ed. 1984); *Rice v.*

*Grant County Bd. of Comm'rs et al.*, 472 N.E.2d 213 (Ind.App.1984).

■ Our examination of the record reveals that Valley Forge did nothing more than deny the plaintiffs' allegations that it had failed to pay after the suit was filed and had improperly "packaged" the punitive damages claim with the compensatory claim. Valley Forge did not assert that the offer to settle was made in good faith—it did not have to. Valley Forge sought to show only that post-filing offers had been made, and, to counter any negative inference that might be drawn from the offer to settle both claims together, Valley Forge sought to show that the idea to "package" the two claims had originated with the plaintiffs' attorney. Offering to show that a post-filing offer of settlement had been made does not inject a new legal or factual issue into the case. The settlement offer is merely a new form of evidence to counter an issue injected by the plaintiffs. Similarly, the testimony of Valley Forge's former attorney, regarding the origin of the decision to "package" the offer of settlement, does not inject a new legal issue, but is merely another method of proof. Therefore, neither the settlement negotiations nor the testimony of McInerey can provide a basis for finding waiver under the "voluntary injection" doctrine.

■ This is not, however, the end of the discussion, since use of a particular method of proof may also waive the privilege if the proof partially reveals confidential communications. *See Lindsey v. State*, 485 N.E.2d 102 (Ind.1985), *on rehearing*, 491 N.E.2d 191 (Ind.1986); *Key v. State*, 235 Ind. 172, 132 N.E.2d 143 (1956). Thus, if either the settlement negotiations or the testimony of Valley Forge's former attorney partially revealed confidential communications, Valley Forge waived its attorney-client privilege by implication. Information intended to be disclosed to third parties is not privileged. *Webster v. State*, 261 Ind. 309, 302 N.E.2d 763 (1973). Therefore, the

---

**2.** In an order denying Valley Forge's motion for judgment n.o.v., the magistrate found that Valley Forge had waived any objections to his ruling on the question of privilege by not objecting at trial. The transcript reveals that the magistrate allowed Valley Forge a continuing objection to the attorney-client issue. The issue was therefore properly preserved.

settlement discussions themselves were not privileged and their use did not partially reveal confidential communications.[3] By offering an attorney's testimony to a specific communication, a client waives the attorney-client privilege only as to disclosure of other communications on the specific matter to which the attorney testified. *Key* 132 N.E.2d at 145. Valley Forge's former attorney was to testify only to the offers of settlement and the origin of the decision to package the settlement offer. This testimony did not imply waiver of the privilege since these issues did not require partially divulging any confidential communications.

■ The magistrate also found that by allowing its former attorney to answer some deposition questions, Valley Forge had waived the attorney-client privilege. The magistrate does not specify which answers support this conclusion. Our examination of the questions answered by McInerney without objection reveals no partial disclosure of privileged information. The answers given pertain only to the settlement discussions themselves, and McInerney's authority to offer settlement. As we have already noted, offers to settle are not protected by the attorney-client privilege and disclosure of such offers does not waive the protections of the privilege.

■ As an alternate basis for the finding of waiver, the magistrate found that Valley Forge had a fiduciary obligation to its insureds and therefore could not invoke the privilege in an action by the insureds. *See LaRocca v. State Farm Mutual Automobile Ins. Co.,* 47 F.R.D. 278 (W.D.Pa.1969); *Shapiro v. Allstate Ins. Co.,* 44 F.R.D. 429

(E.D.Penn.1968); *Chitty v. State Farm Mutual Auto Ins. Co.,* 36 F.R.D. 37 (DC S.C.1964). These cases, however, all turn on the fact that the attorney for the insurance company was also the attorney for the insureds, and thus have no application here. We can find no support in the record for the magistrate's ruling that the attorney-client privilege was waived. We therefore find admission of the privileged information to be error.[4]

■ The challenged documents advised the insurance company that it owed the Lorenzes approximately $60,000 in compensatory damages[5] and faced punitive damages exposure in the six-figure range. Plaintiffs allege that even if this information were privileged, it was merely cumulative. While we agree that there may have been sufficient evidence to warrant punitive damages even absent the privileged information, we cannot say with certainty that the privileged information did not affect the verdict. Accordingly, we reverse the district court orders which found that the memoranda between Valley Forge and its former attorneys were not privileged and remand for a new trial.[6] Circuit Rule 18 shall not apply. This case is

REVERSED and REMANDED.

---

3. The magistrate admitted testimony regarding settlement negotiations, as an exception to FED. R.EVID. 408, to "negativ[e] a contention of undue delay" of payment. This ruling is not challenged on appeal.

4. Plaintiffs argue that Valley Forge voluntarily injected the issue of its former attorney's competence by claiming during opening argument that its former attorney was incompetent. Since this occurred after the magistrate's erroneous ruling, and would not exist but for the ruling, it cannot support a finding of waiver.

5. Apparently, Valley Forge's former attorneys believed that Valley Forge owed the Lorenzes the entire balance of the insurance contract, rather that just the balance due the Lorenzes from the Singletons.

6. In the cross-appeal, the plaintiffs contend that the magistrate erred in denying sanctions against Valley Forge for pursuing this litigation in bad faith. This question merges with the questions of Valley Forge's continuing bad faith and whether punitive damages are warranted on remand. We therefore do not decide the cross-appeal.