952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Wetonah CRABB, Plaintiff-Appellant,
v.
KFC NATIONAL MANAGEMENT COMPANY, Defendant-Appellee.
 No. 91-5474.
 United States Court of Appeals, Sixth Circuit.
 Jan. 6, 1992.
 
 Before KENNEDY and BOGGS, Circuit Judges, and EDGAR, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff Wetonah Crabb appeals the jury verdict for defendant KFC National Management Co. ("KFC") in this action alleging wrongful discharge in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. According to Crabb, KFC terminated Betty Roush, a co-worker of Crabb's, on account of her age, a direct violation of the ADEA. Crabb fought Roush's removal and was subsequently terminated herself. Crabb claims that KFC terminated her in retaliation for assisting Roush, also a violation of the ADEA. The two cases were consolidated for trial, and the jury returned a verdict in favor of Roush on her discrimination claim, but denied Crabb any recovery for her retaliation claim. Crabb now appeals, alleging error with respect to the admissibility of two pieces of evidence. For the reasons set forth below, we AFFIRM the decisions of the court below.
 
 I.
 
 2
 Plaintiff Wetonah Crabb worked in defendant KFC's payroll processing department. Crabb was a Section Leader in the department, which entailed identifying and correcting errors of the other processors and preparers. As part of the job, Crabb was responsible for identifying and documenting the performance shortcomings of workers who were not performing up to KFC standards. Crabb balked, however, when requested to carry out her job duties with respect to one employee in particular, Betty Roush. Crabb felt that Roush was being singled out for termination because of her age, as Roush was 62 at the time. Rather than compile the documentation of Roush's failure to perform, Crabb notified Roush of the impending termination and advised her to take sick leave for a period of time sufficient for her pension to vest. Roush did so, her pension vested, and she then quit at the suggestion of management upon her subsequent return to work.
 
 
 3
 Crabb was undergoing job difficulties of her own during this time period. One of Crabb's daughter's was quite ill, and required a great deal of time and attention to provide her the necessary care. During the spring and summer of 1985, Crabb required extended time away from work to attend to her daughter's medical needs. Crabb managed to get the time away by utilizing her vacation time, her sick leave time, and her personal leave time. In the summer of 1985, it became clear that Crabb would need more time to attend to her daughter, and KFC management began to explore the option of Crabb taking a three-month leave of absence. Such a leave of absence would have several negative ramifications to Crabb, for it would have been without pay, and would have terminated her company paid health insurance. Additionally, Crabb would not have been guaranteed a position upon her return.
 
 
 4
 Crabb was not enthusiastic about such an option, and sought other avenues to accommodate her daughter's needs and her employment. Crabb declined to take the extended leave of absence, and continued seeking to obviate that necessity. Crabb began a two-week vacation leave in August, during which it remained unclear what her status would be upon return. KFC management apparently sought clarification from Crabb concerning her plans, but those attempts were unavailing. Ultimately, KFC notified Crabb that if she did not return to work on September 9, 1985, she would be considered terminated. Crabb responded by seeking and obtaining approval for an additional two-week leave, after which her failure to return to work, or to specify her plans for KFC, would result in her termination. Crabb was instructed that a failure to return to work on September 23, 1985 would result in a voluntary termination as of the previous Friday, September 20, 1985. Crabb did not return to work on the 23rd, and was thereupon terminated.
 
 
 5
 Crabb subsequently filed suit in state court alleging that her termination was an illegal retaliation for her resistance to the alleged age discrimination against Betty Roush. KFC successfully sought removal of both cases to federal court, and the cases were consolidated for trial. Roush was awarded a jury verdict of $150,000 on her claim under the ADEA. Crabb, however, was awarded nothing. She now appeals two evidentiary issues. We review these questions under an abuse of discretion standard. Martin v. Weaver, 666 F.2d 1013, 1020 (6th Cir.1981), cert. denied, 456 U.S. 962 (1982).
 
 II.
 
 6
 Crabb alleges error by the District Court in refusing to admit a memorandum from the KFC legal department relating to the need for supervisory personnel to document the performance shortcomings of employees who were to be terminated. Crabb maintains that the document is essential to her case, as it tends to show that KFC was willing to manufacture documentation against employees to support terminations. KFC successfully argued to the District Court that the document was privileged material, and that it had not willingly waived the lawyer-client privilege.
 
 
 7
 Crabb argues that the privileged status of the document was lost for three reasons. Foremost, she asserts that, inasmuch as she now has possession of the document, all privilege has been waived. It is unclear from the record how Crabb obtained the document, although she states on appeal that she was not given it by defendant. It is unclear whether she received it by means of an unauthorized leak from within KFC or from a third party which had obtained possession of the document.
 
 
 8
 We decline to adopt the broad rule proposed by Crabb. The extent to which precautions are successfully utilized to protect the privileged and confidential nature of such documents is certainly relevant to an inquiry of whether privilege was intended to attach, and ought to be maintained, but the mere fact that a breach in the chain of control has occurred is not sufficient to automatically render a document devoid of any privileged status. The court below considered the precautions taken with respect to the confidentiality, (notations to the effect that the document was "Confidential Privileged Communication"), and the restrictions imposed on the dissemination of the document, ("Do Not Reproduce or Distribute"), and concluded that KFC had adequately attempted to preserve the privileged confidentiality of the memorandum. Although the court could have conducted further inquiry into the nature and extent of the precautions, and more particularly the manner in which the confidentiality was breached, we do not find it to have been an abuse of discretion to deem plaintiff's mere possession of the document as insufficient to constitute a waiver of all privilege. See 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence, § 503(a)(4) p. 43 (1991) (collecting cases) ("Communications which were intended to remain confidential but are intercepted despite reasonable precautions remain privileged.").
 
 
 9
 Crabb further contends that the court erred in not finding privilege waived due to the possible distribution of the document outside of KFC. Crabb contended at trial that privilege was waived due to a notation on the document from KFC's general counsel indicating to the author that a copy should be sent to a "Sandy ( [at] Zantigo)." According to plaintiff's counsel at trial, Zantigo was an affiliated company of KFC, as they were both wholly-owned subsidiaries of Heublein at the time, and Sandy was in management there.
 
 
 10
 The District Court ruled that the simple distribution of legal advice to similarly-situated decision makers at affiliated companies would not constitute a waiver of the confidentiality of the document. It is well settled that attorney-client privilege is not waived merely because the communications involved extend across corporate structures to encompass parent corporations, subsidiary corporations, and affiliated corporations. See, e.g., United States v. AT & T, 86 F.R.D. 603, 616 (D.D.C.1979) ("The cases clearly hold that a corporate 'client' includes not only the corporation by whom the attorney is employed or retained, but also parent, subsidiary and affiliate corporations."); Roberts v. Carrier Corp., 107 F.R.D. 678, 687-88 (N.D.Ind.1985) (identical nature of legal interest test applied to communications between two wholly-owned subsidiaries of common parent); Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1184-85 (D.S.C.1974) ("Although an interest of a third-party corporation from a commercial standpoint would not establish a sufficient community of interest, the fact that the communications are among formally different corporate entities which are under common ownership or control leads this court to treat such inter-related corporate communications in the same manner as intra-corporate communications."); see also Admiral Ins. Co. v. United States Dist. Ct. for the Dist. of Arizona, 881 F.2d 1486, 1493 n. 6 (9th Cir.1989) (recognizing privilege not waived across parent-subsidiary relationship).
 
 
 11
 Finally, plaintiff suggests that the privilege was waived by virtue of its dissemination to non-lawyers within the KFC corporate enterprise. We find such an argument wholly without merit, for it fundamentally misconstrues the nature of privileged communications by legal advisers to corporations. To the extent the document was prepared for KFC executives by their lawyers, performing legal functions, the disclosure of the document in rendering legal advice to non-lawyer executives is within the reach of the privilege.
 
 
 12
 Crabb also alleges error by the District Court in refusing to admit statements allegedly made by a KFC supervisor with respect to a KFC plan to rid the payroll department of "niggers, fossils and crips." The statement allegedly related to the plans to terminate a black woman, an older woman (Betty Roush), and a woman on crutches. The District Court ruled that in the context of the age discrimination claim, the statement relating to the intent to get rid of "fossils" was admissible, but the related comments pertaining to discrimination based upon race or physical handicap were not sufficiently probative to outweigh their prejudicial impact. The court made this ruling both with respect to Crabb's prospective testimony that the KFC executive had made the statement to her, and with respect to another woman's proposed testimony that Crabb told her what had been said to her, and that it had greatly upset Crabb.
 
 
 13
 Under Rule 403, Federal Rules of Evidence, the court is to balance the probative value of such inflammatory evidence with its prospective prejudicial impact. The court below did so and concluded that the statements relating to discrimination on the basis of age and physical handicap were not sufficiently probative of the age discrimination claim to outweigh their obvious prejudicial impact. We do not find an abuse of discretion in such an evaluation.
 
 
 14
 Further, with respect to both pieces of excluded evidence, we note that their probative value principally relates to the issue of whether Crabb was justified in her belief that KFC was discriminating on the basis of age. Since the jury returned a verdict for Roush on her ADEA claim, any error with respect to this evidence of age discrimination was harmless.
 
 III.
 
 15
 For the reasons set forth above, we do not find an abuse of discretion for the District Court to have excluded the document or the discriminatory statements. We therefore AFFIRM the rulings of the court.
 
 
 
 *
 The Honorable R. Allan Edgar, United States District Court for the Eastern District of Tennessee, sitting by designation