GUY L. BRENKMAN, Plaintiff and Counterdefendant-Appellee, *v.* BELMONT MARKETING, INC., *et al.*, Defendants.—(BELMONT MARKETING, INC., Defendant-Counterplaintiff and Third-Party Plaintiff-Appellant, *v.* AMERICAN BUYERS CLUB, INC., *et al.*, Third-Party Defendants.)

Third District    No. 80-6

Opinion filed August 29, 1980.

Lawrence Johnson & Associates, of Champaign, for appellant.

Dean Rhoads and David B. Daley, both of Sutkowski & Washkuhn Associates, of Peoria, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

In a complaint filed in the Circuit Court of Peoria County, the plaintiff, Guy L. Brenkman, sought recovery pursuant to the Franchise Disclosure Act (Ill. Rev. Stat. 1977, ch. 121½, par. 701 *et seq.*). After a hearing on plaintiff's motion for summary judgment as to count I of the complaint, and after reviewing affidavits and documents filed in support of and in opposition to the motion, the trial judge entered judgment in the sum of $15,000 for the plaintiff and against the defendants, Belmont Marketing, Inc., David D. Prince, Frederick K. Prince, and Gregory Gordon. Further, the trial judge rescinded the agreement which is the subject of plaintiff's suit, dismissed with prejudice Belmont Marketing's counterpetition, and awarded attorney fees to be paid by the defendants to plaintiff. This appeal ensued.

The events leading to plaintiff's complaint are traced to July 1978, when plaintiff first discussed with Frederick K. Prince the right to "manage" the American Buyers Club in west-central Illinois. The "manager" of a buyer's club sells memberships in the club to the public. With the payment of a membership fee comes the entitlement to purchase household furnishings, appliances and other consumer goods at bargain prices.

Frederick Prince referred plaintiff to Belmont Marketing and its agents, David D. Prince and Gregory Gordon. After discussions with all these parties, plaintiff and Belmont Marketing executed an agreement dated August 9, 1978, wherein Belmont Marketing assigned to plaintiff all of Belmont's interest in a "Management Agreement" between it and American Buyers Club, Inc. That "Management Agreement," which was also dated August 9, 1978, granted the exclusive right to sell American Buyers Club memberships in a four-county area in accordance with the general policy manual issued by American Buyers Club, Inc. The same "Management Agreement" obligated the "manager" to accept and fill members' orders for merchandise and to pay an "override" fee to Ameri-

can Buyers Club, Inc., for each membership sold. As consideration for the assignment of its rights and obligations under the "Management Agreement," Belmont Marketing was to receive $45,000 from the plaintiff. At the time suit was filed $15,000 of that total amount had actually been paid.

Later in 1978 plaintiff first was advised that the assignment from Belmont might come within the purview of the Franchise Disclosure Act. In accordance with the Act, and after apparently having reconsidered his entry into the Buyers Club business, plaintiff gave the statutory notice of his intent to rescind the assignment agreement. (Ill. Rev. Stat. 1977, ch. 121½, par. 721(2)(b).) When Belmont Marketing failed to voluntarily rescind the assignment and return plaintiff's $15,000 consideration, this suit was filed.

It is plaintiff's contention in count I of his complaint that the "Management Agreement" constitutes a franchise within the statutory definition (Ill. Rev. Stat. 1977, ch. 121½, par. 703(1)), that David D. Prince, Frederick K. Prince and Gregory Gordon negotiated for and on behalf of Belmont Marketing to assign that agreement to plaintiff, and that the assignment was in violation of the required disclosure provisions of the Act (Ill. Rev. Stat. 1977, ch. 121½, par. 704(2)). Plaintiff sought a return of his consideration, an award of $3,000 in damages, plus reasonable attorney fees.

In their joint answer, the four defendants deny that the "Management Agreement" is a franchise as contemplated by the Illinois statute. Additionally, by way of counterclaim, defendant Belmont Marketing alleges numerous violations of the assignment agreement for which it requests enforcement against the plaintiff of the agreement's liquidated damage clause.

■■ As we noted at the outset, the trial judge found no genuine issue as to any material fact in count I of plaintiff's complaint. Therefore, the court below ordered rescission of the assignment agreement and awarded judgment to plaintiff for $15,000 and attorney fees in the sum of $3,000. Defendant's counterclaim was dismissed by the same order. Only defendant Belmont Marketing appeals, but the status of the three individual defendants requires some comment. On December 26, 1979, a notice of appeal was filed in which Belmont Marketing was the only named appellant. The appellant's brief on appeal sought review on behalf of the individual defendants as well as on behalf of Belmont Marketing. Subsequent to the filing of that brief, a motion for leave to file an amended notice of appeal was offered here. Our order of May 14, 1980, denied that motion as required by the prevailing interpretation of Supreme Court Rule 303. (See, *e.g., Block v. Blue Shield Plan of Illinois Medical Service, Inc.* (1974), 24 Ill. App. 3d 751, 320 N.E.2d 576.) After the expiration of the initial 30-day period for filing notice of appeal, and the additional 30-day safety-valve period allowed by Supreme Court Rule 303(e) (Ill. Rev. Stat.

1977, ch. 110A, par. 303(e)), the appellate court is without jurisdiction to permit further amendments of the notice of appeal. *(Block v. Blue Shield Plan of Illinois Medical Service, Inc.)* Taken with this case was a motion by plaintiff seeking to strike portions of defendant's brief. In light of our determination that only Belmont Marketing is properly an appellant here, we grant plaintiff's motion to strike as it relates to those portions of defendant's brief seeking review of the judgments against the three individual defendants.

On appeal Belmont Marketing urges us to hold that the Franchise Disclosure Act cannot, as a matter of summary judgment, be said to apply to these facts. It is argued that the affidavits submitted by defendant raise an issue as to whether a franchiser/franchisee relationship was intended by the parties. We note that the definition of franchise is explicitly set forth in the Act:

"(1) 'Franchise' means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:

(a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and

(b) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and

(c) the person granted the right to engage in such business is required to pay, directly or indirectly, a franchise fee of $100.00 or more;

Provided that this Act shall not apply to any franchised business which is operated by the franchisee on the premises of the franchisor or subfranchisor as long as such franchised business is incidental to the business conducted by the franchisor or subfranchisor at such premises, including, without limitation, leased departments and concessions." (Ill. Rev. Stat. 1977, ch. 121½, par. 703(1).)

None of the criteria set forth in the statute make the subjective intent of the parties a determinative factor in identifying a franchise relation. Rather, by statutory definition, a franchise exists where an agreement meets three objective criteria.

Subparagraph (a) of the statutory definition of the term "franchise" sets forth as the first criteria a right to sell services pursuant to a marketing plan or system. We believe that criteria is met by the terms of the writings here involved. The "Management Agreement" grants the right to "sell American Buyers Club membership agreements" and makes that right

"subject only to present General Policy Manuals, and amendments thereto, now in existence and issued by American." The manuals referred to set forth a plan for marketing buyer's club memberships. In accepting an assignment of Belmont Marketing's rights under the "Management Agreement," the plaintiff agreed to "fully perform Belmont's obligations thereunder * * *." Nothing in the assignment relieves plaintiff from his obligation to follow the marketing plan set forth in American's general policy manual.

■■ The second criteria in the definition of franchise is set forth in subparagraph (b), and deals with the use of a trade name or trade mark. The "Management Agreement" grants the right to "sell American Buyer's Club membership agreements * * *." The right to use the trade name of the American Buyers Club is registered by law according to a certificate issued by the Illinois Secretary of State on October 11, 1977. (See generally Ill. Rev. Stat. 1977, ch. 140, par. 8 *et seq.*) The right to use this trade name in marketing buyer's club memberships inured to plaintiff by way of the assignment agreement.

Finally, subparagraph (c) requires that a consideration of more than $100 be paid for the franchise. In the instant case plaintiff paid $15,000 for the rights he was assigned under the August 9, 1978, agreement. Inasmuch as each criteria in the statutory definition is satisfied, we conclude that the trial court correctly treated the "management" rights which were assigned to plaintiff as equivalent to a franchise under the Act.

Under the Franchise Disclosure Act it is unlawful to sell a franchise without an effective disclosure statement provided to the purchaser. (Ill. Rev. Stat. 1977, ch. 121½, par. 704(2).) Selling includes every disposition of a franchise. (Ill. Rev. Stat. 1977, ch. 121½, par. 703(9).) Where such an unlawful sale occurs, the purchaser shall have a right to rescind the sale if notice is provided within 90 days to each person from whom recovery will be sought. Ill. Rev. Stat. 1977, ch. 121½, par. 721(2)(a) and (b).

■■ A question has been raised here as to whether the notice of December 21, 1978, sent by plaintiff to defendant was timely. It is admitted in affidavits submitted on behalf of Belmont Marketing that the disclosure requirements of the Act were discussed at the time the assignment agreement was executed in August 1978. It is also admitted that plaintiff was assured that the Act did not apply to the assignment. It was only after plaintiff consulted his attorneys in November 1978 that he learned that he was protected by the Act. We believe this is the time at which plaintiff first had knowledge of a violation as contemplated by section 21(2)(b) of the Franchise Disclosure Act (Ill. Rev. Stat. 1977, ch. 121½, par. 721(2)(b)). As such, plaintiff's notice was timely mailed.

In support of our interpretation of section 21(2)(b), we note that an analogous statutory provision has been similarly construed. (*Norville v.*

*Alton Bigtop Restaurant, Inc.* (1974), 22 Ill. App. 3d 273, 317 N.E.2d 384.) The *Norville* court determined that where the statute established a protected class, knowledge of statutory rights contingent on questions of law would not be imputed to that protected class absent advice of counsel. We hold that knowledge of a Franchise Disclosure Act violation is a mixed question of law and fact on which the layman is entitled to acquire his first knowledge from an attorney. *Curtis v. Johnson* (1968), 92 Ill. App. 2d 141, 234 N.E.2d 566.

■■ We are also asked to determine whether the remedy of voiding the franchise sale as allowed by section 21(2) of the Franchise Disclosure Act (Ill. Rev. Stat. 1977, ch. 121½, par. 721(2)) is available if the seller cannot be returned to status quo. No such limitation is prescribed by the statute, and we decline to mandate such a limitation in this case. This cause of action did not exist at common law, but is a unique creation of the legislature. So, too, is the remedy unique and unencumbered by common law limitations on relief. Of course, the trial court under appropriate circumstances can grant such relief as the law and the facts demand (*Baker v. Salzenstein* (1924), 314 Ill. 226, 145 N.E. 355), and under such circumstances it would not be error to order returned to the franchise seller that personal and real property transferred with the franchise.

Section 21(2)(a) provides that transfers of franchises made in violation of the Act are voidable. This clearly evidences a legislative intent to negate the validity of all terms of the agreement whereby the franchise is transferred, especially clauses for liquidated damages that could be assessed against the franchisee. To conclude otherwise would undermine the protection created by the Act and vitiate the relief it offers to beguiled franchisees. That the court below dismissed Belmont Marketing's counterclaim based on such a liquidated damage clause is consistent with the drafter's intended remedy of voiding the unlawful sale contract.

■■ Finally, Belmont Marketing objects that attorney fees were improperly awarded to plaintiff in that insufficient evidence was presented to support the trial court's determination as to amount. The record reveals that plaintiff applied for attorney fees by motion after the circuit court's summary judgment order. That application was supported by an affidavit sworn to by plaintiff's attorney and noticed for hearing at a later date. The record discloses no objection by Belmont Marketing as to the sufficiency of evidence adduced at the hearing on plaintiff's application. Without determining whether the evidence adduced was in fact sufficient, we note that the alleged error could have been obviated had an objection been raised below, and absent such an objection in the record the question is not properly preserved for appellate review. (2 Ill. L. & Prac. *Appeal and Error* §211 (1953).) Having not been preserved for review, the award of attorney fees must remain as ordered by the circuit court.

Based upon the authorities hereinbefore cited, and after weighing the oral and written arguments of counsel, we conclude that the determinations reached below were correct. The judgment rendered by the circuit court is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.