**WLIG–TV, INC., Plaintiff,**

v.

**CABLEVISION SYSTEMS CORPORATION, A–R Cable Services, Inc., V Cable, Inc., Rainbow Programming Holdings, Inc. and Rainbow Advertising Sales Corporation, Defendants.**

No. 93 CV 3019 (JS).

United States District Court, E.D. New York.

Oct. 14, 1994.

WLIG–TV, Inc., Corporate Counsel by Mark W. Gaffney, Melville, NY, for plaintiff.

Sullivan & Cromwell by Yvonne S. Quinn, New York City for defendants Cablevision Systems Corp. et al.

## MEMORANDUM AND ORDER

CADEN, United States Magistrate Judge.

Plaintiff WLIG–TV, Inc. ("WLIG") brings this antitrust action pursuant to the Clayton and Sherman Acts, alleging anticompetitive and monopolistic behavior on the part of Cablevision Systems Corporation and its named subsidiaries (collectively "Cablevision" or "defendants"). On February 18, 1994, this case was referred to the undersigned by random selection. The parties are presently before the court on: (1) defendants' motion to compel the deposition of ten attorneys who provided WLIG with legal advice, for production of related documents and permission to inquire of WLIG principals as to certain communications (e.g., financial arrangements with attorneys) to all of which WLIG has objected on the ground of attorney-client privilege; (2) WLIG's request to modify the Confidentiality Stipulation and Protective Order (the "Confidentiality Order") entered into between the parties on December 15, 1993, and to redesignate two documents under the terms of the Confidentiality Order.

For reasons more fully explained herein, Cablevision's motion to compel is granted, WLIG's request to modify the Confidentiality Order is partially granted and WLIG is permitted to redesignate two documents produced by Cablevision.

### FACTS

The allegations in the complaint describe a course of conduct by Cablevision aimed at precluding carriage of WLIG in Nassau and Suffolk Counties. The purported monopolistic course of conduct includes acquiring other cable systems in Nassau and Suffolk Counties and forms the basis for WLIG's antitrust claims. In short, WLIG alleges that Cablevision refused to carry WLIG because WLIG and cable programming (in which Cablevision has an interest) directly compete with each other for advertising in Nassau and Suffolk Counties.

WLIG filed a complaint against Cablevision on July 8, 1993. However, the bulk of the conduct alleged in the complaint occurred prior to July 8, 1989. In order to toll the four-year statute of limitations provided for in the Clayton Act, WLIG has invoked the equitable doctrines of fraudulent inducement and fraudulent concealment. (Complaint ¶¶ 116–119.) The successful application of these doctrines depends on what and when WLIG knew of any possible antitrust action it could have brought, and if WLIG knew of such a claim, whether it failed to proceed because it relied on Cablevision's representations.

Judge Spatt, by revised order dated November 16, 1993, limited discovery on the issues of statute of limitations, fraudulent concealment, fraudulent inducement and a continuing violation theory. The case has subsequently been reassigned to Judge Seybert. It is in the context of this limited discovery that Cablevision seeks depositions and the production of documents from WLIG that would ordinarily be shielded by the attorney-client privilege.

WLIG, a New York corporation, operates a full-power commercial television station in Nassau and Suffolk Counties and transmits its signal by broadcast (electromagnetic signals emanating from a central antenna).

(Complaint ¶ 7.) Cablevision, a New York corporation, operates cable television systems in the United States and also owns substantial interests in cable television programming services such as, for example, Turner Broadcasting. (Complaint ¶¶ 12, 15.)

In 1985, when it first became operational, WLIG requested carriage on each of the nine cable systems—including Cablevision—then servicing Nassau and Suffolk Counties. (Complaint ¶ 36.) At that time, and until July 1992 (when it provided only limited carriage), Cablevision refused to carry WLIG. (Complaint ¶¶ 39, 110.) Since 1986, Cablevision has acquired 7 of the 8 other cable systems in Nassau and Suffolk Counties. (Complaint ¶ 1(b).) At the time of their acquisition, all seven cable systems carried WLIG. After acquisition by Cablevision, WLIG alleges that Cablevision either dropped WLIG from carriage or moved WLIG to a less favorable channel position. (Complaint ¶¶ 49–59, 69–85.) WLIG contends that by denying access to its television system, Cablevision precluded WLIG from effectively competing with Cablevision for television advertising in Nassau and Suffolk Counties.

Effective June 1993, Cablevision was compelled by law to carry WLIG pursuant to the Congressional enactment of the Cable Television Consumer Protection and Competition Act of 1992 (the "Act"). Specifically, the Act contains "must-carry" provisions requiring that local broadcast station signals be carried by cable television systems. WLIG contends that even after June 1993, Cablevision is not in compliance with the Act and the Federal Communications Commission (the "F.C.C.") regulations promulgated thereunder, because it is not carrying WLIG as part of the basic service package in two prime areas in Long Island, Woodbury and Huntington. (Complaint ¶¶ 108–110.)

The "must-carry" provisions of the Act have generated litigation both in federal court (the District of Columbia) and before the F.C.C. The Supreme Court recently considered a First Amendment challenge to the "must-carry" provisions in *Turner Broadcasting System, Inc. v. Federal Communications Commission,* —— U.S. ——, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)[1]. In *Turner,* the Supreme Court described the advantages posed by cable stations over broadcast stations as twofold: (1) superior reception and (2) increased channel carrying capacity. *Id.,* —— U.S. at ——, 114 S.Ct. at ——. Signals transmitted by broadcast travel are subject to interference by obstacles such as hilly terrain. Cable transmission, on the other hand, is facilitated by point-to-point connections between a transmitting facility and televisions of individual subscribers via cable or optical fibers located both above and underground. *Id.,* —— U.S. at ——, 114 S.Ct. at ——. Cable technology thereby eradicates reception interference common to broadcast transmissions and enables cable systems to provide a wide selection of channels to viewers. *Id.* Accordingly, carriage of its signal on a cable system is often critical to the success or failure of a broadcast television station. *See generally id.*

In part, WLIG seeks to modify the Confidentiality Order entered on December 15, 1993, by Magistrate Judge Orenstein (on consent of the parties), so that currently protected documents and testimony can be available for use in connection with *Turner Broadcasting System, Inc. v. Federal Communications Commission,* 819 F.Supp. 32 (D.D.C. 1993), —— U.S. ——, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (on remand). WLIG also seeks to use these documents and testimony in conjunction with: (1) a petition filed with the F.C.C. by Cablevision requesting a waiver of the "must-carry" regulations wherein, *inter alia,* Cablevision seeks permission to carry WLIG only in Long Island rather than in the New York ADI; and (2) an administrative complaint which WLIG's counsel advises the undersigned it may file with the F.C.C. against Cablevision.

---

**1.** In *Turner,* the United States District Court in the District of Columbia granted the F.C.C.'s motion for summary judgment. On appeal, a majority of the Supreme Court was prepared to find the statute constitutional, however, it re-

manded the case back to the district court because certain issues of material fact remained open and summary judgment was thus deemed inappropriate.

*DISCUSSION*

## I. Discovery

### A. *Attorney–Client Privilege*

 The attorney-client privilege protects communications between a client and an attorney but does not shield facts underlying the communications. *Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981). The purpose of this "oldest of privileges" is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." *Id.* at 389, 101 S.Ct. at 682.

The Second Circuit recently admonished that "[a]n uncertain privilege—or one which purports to be certain, but results in widely varying applications by the courts—is little better than no privilege." *In re von Bulow,* 828 F.2d 94, 100 (2nd Cir.1987). However, the Second Circuit has also advised that the attorney-client privilege "cannot at once be used as a shield and a sword." *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991), *cert denied,* 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991). Under certain circumstances the attorney-client privilege is deemed waived:

> A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.... Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications. *Id.* at 1292.

In *Bilzerian,* the Second Circuit found that the defendant had impliedly waived the attorney-client privilege because his conversations with counsel on the legality of his securities schemes were "directly relevant in determining the extent of his knowledge and, as a result, his intent" and put "the basis of his understanding of what the law required in issue." *Id.* Accordingly, Cablevision's requests turn on whether WLIG can be said to have waived the attorney-client privilege.

### B. *Equitable Doctrines*

WLIG has sought to bypass the four-year statute of limitations established in the Clayton Act by invoking equitable doctrines. WLIG has alleged in its complaint that notwithstanding its due diligence—because of Cablevision's fraudulent concealment and fraudulent inducement—it could not have discovered the basis for its antitrust claims until May 3, 1993. Namely, WLIG points to Cablevision's assurances, characterized as false, that carriage would be provided as soon as either a station became available or a channel upgrade (from 36 to 52 channels) was completed. (Complaint ¶¶ 42, 94–97.) On May 3, 1993, WLIG's counsel purportedly "discovered" a statement in Cablevision's Annual Report for 1992 (a Form 10–K filed with the Securities Exchange Commission on March 24, 1993), which undercut Cablevision's assurances that it would carry WLIG as soon as an upgrade was completed; the Annual Report indicated that a channel upgrade had been completed as of December 31, 1992.[2] (Complaint ¶ 118.)

 A plaintiff who calls upon the doctrine of fraudulent concealment (equitable tolling) to toll the statute of limitations bears the responsibility of establishing:

> (1) that the defendant concealed from him the existence of his cause of action, (2) that he remained in ignorance of that cause of action until some point within four years of the commencement of his action, and (3) that his continuing ignorance was not attributable to lack of diligence on his part. *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1083 (2nd Cir.1988), *cert. denied,* 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988).

 Drawing from civil rights case law, a plaintiff who invokes the doctrine of fraudulent inducement (equitable estoppel) must prove that it relied on the defendant's bad faith representations and that because of

---

**2.** This "discovery," Cablevision espouses, was made six weeks after Mr. Gaffney was hired by WLIG in response to an advertisement seeking an "[a]ttorney, antitrust litigator ... to manage sophisticated antitrust action in-house for a major corporation." *See* Exhibit E, annexed to *Cablevision Letter Memorandum in Support of Motion to Compel,* dated July 18, 1994.

such representations, plaintiff did not bring a timely suit. *Dillman v. Combustion Engineering, Inc.,* 784 F.2d 57, 61 (2d Cir.1986); *Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 49 (2d Cir. 1985).

Cablevision argues that in order to ascertain whether in fact WLIG knew of its antitrust claims against Cablevision earlier than May 3, 1993, Cablevision must be permitted to depose attorneys advising WLIG during the relevant time period, examine documents prepared by such attorneys and ask questions of WLIG principals, all of which would concededly be ordinarily shielded by the attorney-client privilege. Such discovery, according to Cablevision, may lead to information indicating that WLIG was advised to forbear pursuing a litigation strategy because of, for example, the high costs associated with such litigation or the probability, or lack thereof, of a successful outcome. As succinctly set forth by Cablevision:

> The content of WLIG's communications with its lawyers may establish when WLIG acquired knowledge of its antitrust claims, whether it exercised due diligence to discover those claims and the reason WLIG failed to file suit within the limitations period, despite its frequent consultation of lawyers who would have commenced such an action. *Cablevision's Letter Memorandum in Support of Motion to Compel* at 2, July 18, 1994.

### C. Implied Waiver

■ Waiver of the attorney-client privilege can be express (voluntary disclosure) or implied. Implied waiver, sometimes referred to as "at issue" waiver was first analyzed in depth in *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash.1975). In *Hearn,* the court found that:

> All of the[ ] established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. The

factors common to each exception may be summarized as follows: (1) assertion of privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct. *Id.* at 580.

■ Cablevision contends that by raising equitable doctrines as a means of evading a statute of limitations bar, WLIG has put protected communications at issue. The undersigned agrees. This very same issue has been considered by other courts in this circuit. *Bohack Corp. v. Iowa Beef Processors, Inc.,* No. 77 Civ. 1673, 1981 WL 2018 (E.D.N.Y. January 13, 1981); *Connell v. Bernstein–Macaulay, Inc.,* 407 F.Supp. 420 (S.D.N.Y.1976).

*Connell* was brought under the 1933 and 1934 Securities Exchange Acts, both of which incorporate a one-year statute of limitations which had already run at the time the action was commenced. To bypass the statute of limitations, plaintiff pleaded fraudulent inducement. Using the *Hearn* discussion on implied waiver as a starting point, Judge Knapp found that plaintiff had waived the attorney-client privilege:

> [W]here a litigant seeks to avoid a statutory protection which has been established for the benefit of his adversary (e.g. a statute of limitations), by a claim that his adversary is estopped to assert such protection; and where it appears that there is a good faith basis for believing that invasion of the attorney-client privilege would shed light on the validity of such claim of estoppel; the party making such assertion must be deemed to have waived the privilege. *Connell v. Bernstein–Macaulay,* 407 F.Supp. at 423.

Accordingly, plaintiff's objections to deposition questions on communications between plaintiff and its law firm, Winthrop, Stimson,

Putnam & Roberts, were overruled. Similarly, in *Bohack,* an antitrust action in which the plaintiff pleaded fraudulent concealment in order to overcome the statute of limitations bar, the court held that attorney-client privilege was waived because "plaintiff resort[ed] to equity in order to nullify the protection at law which is otherwise afforded to his adversary." *Bohack Corp. v. Iowa Beef,* 1981 WL 2018 at *2. In so holding, Judge Mishler relied on the logic employed in *Connell.*

WLIG has informed this court that *Hearn* has recently been cast into doubt by the Third Circuit in *Rhone–Poulenc Rorer Inc. v. Home Indemnity Co.,* 32 F.3d 851 (3rd Cir. 1994):

> Some decisions have extended the finding of a waiver of the privilege to cases in which the client's state of mind may be in issue in the litigation. These courts have allowed the opposing party discovery of confidential attorney-client communications in order to test the client's contentions. *See, e.g. Byers v. Burleson,* 100 F.R.D. 436 (D.D.C.1983); *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash.1975). These decisions are of dubious validity. While these opinions dress up their analysis with a checklist of factors, they appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed. Relevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue. *Id.* at 864.

*Rhone–Poulenc* fits squarely into that line of cases offered by WLIG in support of its position that the doctrine of implied waiver of attorney-client privilege has been superseded by case law requiring an express waiver. However, *Rhone–Poulenc* and the cases cited by WLIG are examples of cases in which the attorney-client privilege is sought to be vitiated on grounds other than the narrow issue of statute of limitations, which is presently before the undersigned. *See, e.g., Allen v. West Point–Pepperell Inc.,* 848 F.Supp. 423 (S.D.N.Y.1994); *Standard Chartered Bank v. Ayala International Holdings (U.S.) Inc.,* 111 F.R.D. 76 (S.D.N.Y.1986) (Grubin, M.J.).

*Rhone–Poulenc* and the above referenced cases are inapposite because they are "garden-variety" cases in which indeed only the knowledge of a party is at issue. Inevitably, in any litigation, a party's knowledge is relevant. Something more than merely relevance, however, is at stake when a plaintiff seeks to overcome a statute of limitations bar by interjecting equitable doctrines. *See, e.g., Bohack Corp. v. Iowa Beef,* 1981 WL 2018; *Connell v. Bernstein–Macaulay,* 407 F.Supp. 420. The statute of limitations affords protection of paramount importance to a defendant and is not lightly cast aside.

Additionally, the factors enumerated in *Hearn* have been consistently applied in the Second Circuit to "answer the question of whether a party has impliedly waived the attorney-client privilege." *Paramount Communications, Inc. v. Donaghy,* 858 F.Supp. 391, 395 (S.D.N.Y.1994).

Application of the *Hearn* factors to the instant facts leads to the conclusion that the attorney-client privilege has been impliedly waived by WLIG. Firstly, WLIG asserted the privilege by its affirmative act of filing this pending suit. Secondly, WLIG put otherwise protected information at issue by raising equitable doctrines to overcome a limitations bar. Thirdly, Cablevision has amply demonstrated that application of the privilege would deny it access to information vital to its defense. Accordingly, this court is constrained to grant Cablevision's motion to compel in full.

The breadth of the waiver encompasses all of the information sought by Cablevision. Specifically, Cablevision is permitted to depose:

1. *Peter I. Cavallaro* (WLIG in-house attorney).
2. *Mark W. Gaffney* (WLIG in-house attorney and counsel of record).
3 & 4. *Joseph L. Getraer and Marvin R. Lange* (attorneys with Rosenman & Colin during the relevant time period).
5. *Daniel J. Danser* (attorney approached by WLIG during the relevant time period).

6. *Victor E. Ferrall, Jr.* (attorney with Crowell & Moring during the relevant time period).

7. *Richard R. Zaragosa* (attorney with Fisher, Wayland, Cooper & Leader in Washington, D.C.).

8. *Gary M. Cohen* (attorney with Blumfield & Cohen in Washington D.C. and formerly with the Antitrust Division of the Justice Department.)

9. *Howard Breindel* (attorney with Breindel & Ferstending P.C.).

10. *Steven M. Kramer* (attorney with Steven M. Kramer & Assoc.).

WLIG is ordered to produce the following documents:

*Document Nos. 21, 30, 35, 64A, 54, 82–25, 103–04, 109–10:* Described by WLIG as relating to the retention of attorneys to litigate antitrust claims.

*Document No. 57:* Described by WLIG as relating to the "closing of the file in WLIG's 1986 State Court Application for Pre–Complaint Depositions."

*Document Nos. 64, 72, 75–76:* Described by WLIG as relating to a presentation made to the New York Attorney General's Office (1988).

*Document Nos. 73–74, 90, 105–08, 111:* Described by WLIG as the history of WLIG's cable carriage which Cablevision alleges was used to brief antitrust litigators in the course of deciding whether to retain them.

*Document No. 112:* Described by WLIG as allegations it was prepared to make in this suit (created on March 5, 1993).

Finally, WLIG's objections to deposition questions asked of its principals Mr. Pascucci and Mr. Chauvin are overruled. Accordingly, Messrs. Pascucci and Chauvin are directed to answer Cablevision's question on communications with attorneys about: (1) specific fee arrangements; (2) cost of litigation; (3) reasons for timing of bringing suit; (4) statute of limitations; (5) alternative methods considered by WLIG to obtain carriage; and (6) efficacy of suit. *See generally Cablevision's Letter Reply Memorandum in Support of Motion to Compel,* dated July 25, 1994.

## II. The Confidentiality Order

The Confidentiality Order entered into by the parties provides, in relevant part, that "information or documents ... that are obtained during discovery in this action ... shall be used for the preparation and trial of this action, including any appeal and retrial, and shall not be used for any other purpose, including for business or governmental purposes for any administrative or other judicial proceeding." (Confidentiality Order ¶ 3.) The Confidentiality Order can be vacated for "good cause." (Confidentiality Order ¶ 12.)

■ The Confidentiality Order shall be modified to permit WLIG and Cablevision to use documents and testimony culled in the present action in connection with the pending F.C.C. administrative hearings and the complaint that WLIG may potentially file with the F.C.C. There is an identity of parties in the pending and proposed F.C.C. actions and issues overlapping those present here. The undersigned finds that "the information is sufficiently relevant and necessary to outweigh the harm disclosure would cause." *Se–Won Indus. Co. v. Pres–Vac Engineering A/S,* Nos. 90 Civ. 2816, 90 Civ. 4551, 1992 WL 202332 at *2 (E.D.La. Aug. 11, 1992) (Africk, M.J.) (quoting 8 Wright & Miller, Federal Practice and Procedure § 2043 (West 1970) at 301).

■ The Confidentiality Order, however, will not be modified so as to allow documents and testimony connected to the instant litigation for use in conjunction with *Turner* on remand to the District of Columbia. Neither WLIG nor Cablevision are parties in *Turner.* Furthermore, if indeed there will be any additional discovery in *Turner* (on remand), discovery is subject to the control the United States District Court in the District of Columbia.

WLIG's request to redesignate two documents (Nos. C00354–48 and C003568–77) from "restricted confidential" to "confidential" under the terms of the Confidentiality Order is granted. These documents can now be shared by WLIG's counsel, Mr. Gaffney, with his client.

## CONCLUSION

In light of the foregoing, Cablevision's motion to compel discovery is granted in full, and WLIG's request to modify the Confidentiality Order is granted in part and denied in part.

SO ORDERED.