**PYRAMID CONTROLS, INC., Plaintiff,**

v.

**SIEMENS INDUSTRIAL AUTOMATIONS, INC., et al., Defendants.**

No. 97 C 3596.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 6, 1997.

Gary W. Leydig, Levin, McParland, Phillips & Leydig, Chicago, IL, for Plaintiff.

John R. Myers, Erik F. Dyhrkopp, Bell, Boyd & Lloyd, Chicago, IL, for Defendants.

## *MEMORANDUM OPINION AND ORDER*

ALESIA, District Judge.

Before the court are two discovery motions filed by defendants Siemens Industrial Automations, Inc. and Siemens Energy & Automation, Inc. (collectively "Siemens"). These motions are (1) Siemens' motion to compel compliance with subpoena duces tecum served on a third party, the law firm of Zavislak & Mann and (2) Siemens' motion to compel Pyramid Controls, Inc. ("Pyramid") to answer interrogatories and produce documents. For the following reasons, the court (1) grants in part and denies in part Siemens' motion to compel compliance with subpoena duces tecum and (2) grants in part and denies in part Siemens' motion to compel Pyramid to answer interrogatories and produce documents.

## I. BACKGROUND

Pyramid has filed suit against Siemens, alleging that Siemens terminated Pyramid's franchise without good cause in violation of the Illinois Franchise Disclosure Act ("IFDA"). (Am.Compl.¶ 17.) The alleged termination occurred on June 14, 1995, when Siemens informed Pyramid that it was terminating two distributor agreements which gave Pyramid the right to offer, sell, and distribute Siemens' products. (Am. Compl.¶¶ 9, 15.) The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, as there exists complete diversity between the parties and the amount in controversy exceeds $75,000. (Am. Compl.¶ 5.)

In 1995, after being notified of the alleged termination but before Pyramid filed this lawsuit, Pyramid sold its distributorship assets to Steiner Electric Company ("Steiner"). (Plaintiff's Memorandum in Response to Siemens' Motions to Compel (hereinafter "Pl.'s Resp. Memo.") at 7.) During the period in which the sale of the distributorship took place, the law firm of Zavislak & Mann provided Pyramid legal advice, legal representation or some other type of legal services. (Pyramid's Answers to Siemens' First Set of Interrogatories (hereinafter "Pl.'s Ans.") at 3.)

On January 17, 1997, Pyramid met with its current attorney. (Pl.'s Ans. at 2.) Pyramid alleges that it was not until during the course of this meeting that Pyramid learned for the first time that the distributor agreements constituted a franchise under the IFDA or that Siemens had violated the IFDA. (Am. Compl.¶ 20.) Pyramid then filed this complaint on May 15, 1997.[1]

The parties are currently before the court because they are embroiled in several discovery disputes. As a result, Siemens has moved this court: (1) to compel Zavislak & Mann to testify on the subjects of the alleged termination of Pyramid's distributorship and the sale of its distributorship to Steiner; (2) to compel Pyramid to identify all communications it had prior to January 17, 1997, with any person, including Zavislak & Mann, relating to Siemens; (3) to compel Pyramid to identify all communications it had with any person, including Zavislak & Mann, relating to the sale of its business to Steiner; (4) to compel Pyramid to identify all communications that took place at the January 17, 1997, meeting with its current attorney; (5) to compel Pyramid to produce documents exchanged between it and its current counsel at the January 17, 1997, meeting; and (6) to compel Pyramid to produce documents dated prior to January 17, 1997, which related to the termination or sale of its distributorship. Pyramid contends that the discovery which Siemens seeks is protected by the attorney-client privilege, the work-product doctrine, or both. Siemens contends that Pyramid has waived both the attorney-client privilege and protection under the work-product doctrine.

## II. DISCUSSION

### A. Waiver of the attorney-client privilege

■ Pyramid contends that the sought after discovery is protected by the attorney-client privilege. In this diversity-of-citizenship case which is based on Illinois state law, Illinois law governs issues concerning the attorney-client privilege. FED.R.EVID. 501; *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1097 (7th Cir.1987). In Illinois, the party who claims the attorney-client privilege has the burden of coming forward with evidence that establishes the privilege. *Consolidation Coal Co. v. Bucyrus–Erie Co.*, 89 Ill.2d 103, 59 Ill.Dec. 666, 673, 432 N.E.2d 250, 257 (1982).

In this case, Siemens does not challenge whether Pyramid is entitled to claim the attorney-client privilege to the sought after discovery; rather, Siemens contends that Pyramid has waived the otherwise available

---

1. In an Order dated September 23, 1997, the court dismissed Pyramid's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to plead sufficiently that Siemens had terminated the franchise without good cause. The court gave Pyramid leave until October 6, 1997 to amend its complaint. Pyramid filed its amended complaint on October 2, 1997. Pursuant to Federal Rule of Civil Procedure 15(c), the amended complaint relates back to the date of the original complaint.

attorney-client privilege. This opinion, therefore, limits itself to that issue.

Waiver of the attorney-client privilege can be either express or implied. *Lorenz*, 815 F.2d at 1098. Implied waiver of the attorney-client privilege can occur where a party voluntarily injects either a factual or legal issue into the case, the truthful resolution of which requires an examination of the confidential communications. *Id.; see A.O. Smith Corp. v. Lewis, Overbeck & Furman*, 1991 WL 192200, at *3 (N.D.Ill. Sept. 23, 1991). This type of waiver is often referred to as "at issue" waiver. *WLIG–TV, Inc. v. Cablevision Sys. Corp.*, 879 F.Supp. 229, 234 (E.D.N.Y.1994).

*Hearn v. Rhay* is the seminal case on "at issue" waiver. In that case, the court observed:

> All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. The factors common to each exception may be summarized as follows: (1) assertion of privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

68 F.R.D. 574, 580 (E.D.Wash.1975).

Neither the parties nor the court were able to find Illinois state court precedent directly addressing whether Illinois law on the attorney-client privilege recognizes at-issue waiver. Indeed, in the recent case of *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, the Supreme Court of Illinois declined to rule on the "at-issue exception" to the attorney-client privilege. 144 Ill.2d 178, 161 Ill.Dec. 774, 779, 579 N.E.2d 322, 327 (1991). However, in that decision, albeit in *dicta*, the Supreme Court of Illinois provided the following relevant comments on the attorney-client privilege:

> The purpose of the attorney-client privilege is to encourage and promote frank and full consultation between a client and legal advisor by removing the fear of compelled disclosure of information. However, the privilege is not without conditions, and we are mindful that it is the privilege, not the duty to disclose, that is the exception. Therefore, the privilege ought to be strictly confined within its narrowest possible limits.... Finally, we note that in Illinois, we adhere to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of the lawsuit.

*Id.*, 161 Ill.Dec. at 778–79, 579 N.E.2d at 326–27 (citations omitted).

In a diversity case such as this where there is no state court precedent on the issue in question, the court's role is to replicate how an Illinois state court would most likely handle the same problem. "The great weight of authority holds that the attorney-client privilege is waived when a litigant 'place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.'" *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir.1989) (citations omitted). Both the Seventh Circuit and courts in the Northern District of Illinois have recognized at-issue waiver. *See, e.g., Lorenz*, 815 F.2d at 1097; *A.O. Smith Corp.*, 1991 WL 192200, at *4 (sitting in diversity and applying Illinois state law on privilege). Finally, the parties agree that by placing a matter in issue, the party has waived the attorney-client privilege with respect to the specific issue raised. (Pl.'s Resp. Memo. at 4–5 (citing *Lorenz*, 815 F.2d at 1099).) Thus, the court finds that an Illinois state court would recognize the doctrine of at-issue waiver in this case.

### 1. *The IFDA one-year time limitation*

In its complaint, Pyramid alleges that it "first acquired knowledge that the Distributor Agreements were a franchise under the Illinois Franchise Act, and that [Siemens] had violated the Illinois Franchise Act, in the course of conversations with its attorney in January of 1997." (Am.Compl.¶ 20.) Siemens contends that by making this allegation, Pyramid waived the attorney-client privilege as to confidential communications relating to the termination and sale of Pyramid's distributorship because this allegation put at issue whether Pyramid's claim was barred by one-year time limitation of section 705/27 of the IFDA. 815 ILCS § 705/27 (providing the statute of limitations applicable to IFDA claims). Pyramid argues that this allegation only put at issue whether "prior to January of 1997, Pyramid's attorneys advised Pyramid that it was a franchise or had a claim under the Act." (Pl.'s Resp. Memo. at 5.)

The parties disagreement as to what Pyramid's allegation puts at issue results from a disagreement as to when the one-year time limitation of section 705/27 begins to run. Thus, in order to determine what effect Pyramid's allegation has on the attorney-client privilege, the court must first address the parties' dispute over when the one-year time limitation begins to run. The difficulty of this issue is that there is little Illinois precedent addressing section 705/27. Moreover, the parties did not cite and the court could not find any cases which directly address the issue before the court. Thus, the court will attempt to resolve this issue as it determines an Illinois state court would.

■ Section 705/27, which provides the applicable statute of limitations for IFDA claims, states that a private plaintiff may not bring a cause of action under the IFDA "unless brought before the expiration of . . . one year after the franchisee becomes aware of facts or circumstances reasonably indicating that he may have a claim for relief in respect to conduct governed by this Act." 815 ILCS § 705/27. The one-year time period begins to run once the plaintiff has knowledge of a possible violation of the IFDA. *See Port City Leasing v. Loffredo*, 114 Ill.App.3d 775, 70 Ill.Dec. 560, 562, 449 N.E.2d 907, 909 (1983); *Brenkman v. Belmont Marketing, Inc.*, 87 Ill.App.3d 1060, 43 Ill.Dec. 500, 504, 410 N.E.2d 500, 504 (1980). That is to say, the one-year time period begins to run when the plaintiff has both knowledge of the factual basis for the IFDA claim as well as legal knowledge of the IFDA's potential protection. *See Brenkman*, 43 Ill.Dec. at 504, 410 N.E.2d at 504; *Freudenberg Bldg. Sys., Inc. v. Architectural Floor Sys., Inc.*, 1995 WL 598827, at *8 (D.Mass. Oct. 3, 1995).

The issue over which the parties in this case are arguing is when it can be said that the plaintiff possesses the requisite legal knowledge of the IFDA's potential protection. The Illinois courts have recognized that a plaintiff might not be aware of the IFDA or its potential protection until after he has consulted with an attorney. *See Port City Leasing*, 70 Ill.Dec. 560, 449 N.E.2d at 909; *Brenkman*, 43 Ill.Dec. at 504, 410 N.E.2d at 504; *accord My Pie Int'l, Inc. v. Debould, Inc.*, 687 F.2d 919, 923 (7th Cir. 1982). However, the Illinois courts have never held that the one-year time period will not begin to run until the attorney specifically advises the client that he is a franchisee and he has a possible claim under the IFDA. *See Hengel, Inc. v. Hot 'N Now, Inc.*, 825 F.Supp. 1311, 1319 (N.D.Ill.1993) (noting that the language of section 705/27 "suggests that facts short of express advice from counsel will start the running of the statute").

■ While the Illinois courts might be willing to presume that a layman might not be aware of a regulatory statute like the IFDA, an attorney is presumed to know the law. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 158 Ill.App.3d 562, 110 Ill.Dec. 702, 706, 511 N.E.2d 879, 883 (1987) ("It is well settled that lawyers are presumed to know the law.") (citations omitted). Thus, important to the issue of when the plaintiff acquires the requisite legal knowledge is the well-established rule that "knowledge of an attorney is treated as knowledge of, or at least knowledge imputed to, the client notwithstanding whether the attorney has actually communicated such knowledge to the client." *Yugoslav–American Cultural Center, Inc. v. Parkway Bank & Trust Co.*, 289

Ill.App.3d 728, 224 Ill.Dec. 840, 846–47, 682 N.E.2d 401, 407–08 (1997) (citations omitted).

Pyramid cites *My Pie* for the proposition that if the plaintiff first learned of his IFDA claim from his attorney, the statute of limitations begins to run on the date that the attorney informs the plaintiff of his claim and "not some earlier date on which the attorney may have known of the claim but did not communicate it to the client." (Pl.'s Resp. Memo. at 3.) Although the headnotes of the case might indicate otherwise, *My Pie* does not stand for this proposition. In *My Pie*, the plaintiffs sued the defendants to recover royalties under and damages for breach of certain franchise agreements. *My Pie*, 687 F.2d at 921. The defendants argued that the franchise agreements were void because the plaintiff had violated the IFDA and the defendants had rescinded the agreements within ninety days after they became aware of the IFDA violations. *Id.* at 922–23. The defendants claimed that they did not know of the IFDA violation until a conference with their attorney. *Id.* at 923. This was the only conference between the defendants and an attorney mentioned in the case. In finding that this was the date on which defendants became aware of their IFDA claim, the Seventh Circuit noted that the plaintiff "has not proved that the defendants had earlier knowledge of the violations." *Id.* The inference from this language is that the plaintiff could have proved in some way that the defendants had earlier knowledge. That is all that *My Pie* stands for with respect to this issue. *My Pie* cannot be fairly cited for the proposition that a lawyer's knowledge of an IFDA claim which is based on information supplied by the client will not be imputed to his client.

Based on the above discussion, the court finds that, at a minimum, the one-year time limitation of section 705/27 begins to run once the plaintiff has presented sufficient facts and/or circumstances to his attorney that "reasonably indicate" that the plaintiff might have a claim under the IFDA. As the *Freudenberg* court explained, the "combination of the client's factual knowledge and the lawyer's legal knowledge suffices to constitute 'facts or circumstances reasonably indicating' the possibility of a claim, within the meaning of the limitations provision of the [IFDA]." *Freudenberg*, 1995 WL 598827, at *8.

Having determined this, the court must now determine whether Pyramid has waived its attorney-client privilege and, if so, to what extent. Pyramid filed this suit on May 15, 1997. According to section 705/27, if Pyramid was aware of its IFDA claim as of May 14, 1996,[2] the claim would be time barred. In an attempt to defeat the one-year time limitation defense, Pyramid has alleged that it was not aware of its status as a franchise or of its possible claim against Siemens until January of 1997 during the course of a conversation with its attorney.

As explained above, however, the one-year time limitation did not begin to run only after counsel expressly advised Pyramid that is was a franchise and that it had an IFDA claim; rather, at a minimum, the one-year time limitation would have begun to run once Pyramid presented sufficient facts to its attorney that would reasonably indicate an IFDA claim. Thus, the relevant legal issue is what information concerning the termination Pyramid conveyed to counsel and what advice concerning Pyramid's legal rights based on that information was given to Pyramid prior to May 14, 1996. Pyramid has put at issue those communications by attempting to defeat the statute of limitations. Moreover, invasion of the attorney-client privilege is necessary because the specific content of those communications is essential to resolving the statute of limitations issue. Accordingly, the court finds that Pyramid's

---

**2.** Federal Rule of Civil Procedure 6(a) provides in part:

In computing any period of time prescribed or allowed ... by any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included.

The IFDA does not provide a method for computation of the time provisions and the parties have not addressed this issue. Thus, for the purposes of this opinion, the court will assume that Federal Rule of Civil Procedure 6(a) governs the computation of the time period in this case. *See Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

confidential communications with its attorneys concerning the alleged termination from the time of termination until May 14, 1996, are directly at issue and Pyramid has waived its attorney-client privilege as to those specific communications. *See, e.g., A.O. Smith Corp.,* 1991 WL 192200, at *4 (finding that plaintiffs waived the attorney-client privilege as to any confidential communications that bear on the date on which plaintiffs discovered their injury); *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991) (finding that defendant waived the attorney-client privilege where his good faith defense placed his knowledge of the law and his communications with counsel directly at issue); *Conkling,* 883 F.2d at 435 (finding that plaintiff had waived the attorney-client privilege by injecting into the litigation the issue of his knowledge of his claim); *WLIG–TV,* 879 F.Supp. at 234–35 (finding that plaintiff waived the attorney-client privilege by raising estoppel as a means for avoiding the statute of limitations); *Hearn,* 68 F.R.D. at 581 (finding that defendant had waived attorney-client privilege by asserting good-faith defense of which advice of counsel is an element).

Contrary to Siemens' argument, however, Pyramid has not waived its attorney-client privilege as to confidential communications concerning the sale of its distributorship. What is at issue is what facts Pyramid presented to its attorney concerning the alleged termination and what advice counsel gave Pyramid with regard to possible claims based on those facts. Confidential communications that concern only the sale of Pyramid's distributorship have no direct bearing on what is at issue. *See, e.g., Conkling,* 883 F.2d at 436 (finding that plaintiff had waived the attorney-client privilege only as to communications concerning what was directly at issue).

Also contrary to Siemens' arguments, Pyramid has not waived its attorney-client privilege as to all communications that took place during the January 17, 1997 meeting. Pyramid has only put at issue communications which relate to the statute of limitations defense. At-issue waiver does not put all communications at a particular meeting in issue;

rather, it puts at issue all communications concerning a particular legal or factual issue.

Accordingly, the court finds that Pyramid has waived its attorney-client privilege only as to those confidential communications that occurred between June 14, 1995 and May 14, 1996, which concern the following issues: (1) whether Pyramid discussed the alleged termination with its attorneys and, if so, (2) what information Pyramid told its attorneys about the alleged termination; (3) when Pyramid supplied that information; and (4) what legal advice Pyramid's attorneys gave Pyramid regarding Pyramid's rights concerning the alleged termination.

### 2. *Economic duress*

Siemens also contends that it "is entitled to discovery concerning Pyramid's attorney-client communications and its attorney's work-product because access to counsel, advice of counsel, and discussion of legal options are all relevant to the issue of economic duress." (Def.'s Memo. at 12.) Siemens' argument supporting this contention is that "[c]onceivably, Pyramid might argue that its termination was constructive because it sold the Siemens distributor business under economic duress." (*Id.*) Siemens' contention is meritless.

 As Siemens acknowledges, Pyramid has neither alleged nor put forward a case of economic duress. (Def.'s Memo. at 12; Pl.'s Resp. Memo. at 7.) Thus, Siemens has not shown that the content of any confidential communications concerning economic duress is directly relevant to either Pyramid's claims or Siemens' defenses. Moreover, Pyramid has not placed the issue of economic duress at issue simply by suing for wrongful termination under the IFDA. Although Siemens contends that Pyramid must advance a theory of economic duress in order to prove its claim of wrongful termination, the cases which Siemens cites simply do not support such a sweeping proposition. It must be the holder of the privilege who injects the issue into the case. *See Lorenz,* 815 F.2d at 1098. Siemens cannot inject an issue into the case and then claim that it is entitled to any confidential communications on that issue. Accordingly, the court finds that Pyramid

has not waived its attorney-client privilege as to confidential communications concerning the issue of economic duress.

## B. *Waiver of protection under the work-product doctrine*

█ Pyramid also argues that the confidential communications are protected by the work-product doctrine. Unlike the attorney-client privilege, in diversity cases, federal law governs issues concerning the work-product doctrine. *A.O. Smith Corp.*, 1991 WL 192200, at *1. The work-product doctrine is a federal doctrine that derives from the landmark case of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and that has now been codified into Federal Rule of Civil Procedure 26(b)(3). *A.O. Smith Corp.*, 1991 WL 192200, at *1. The work-product doctrine provides protection to documents prepared by or for an attorney "in anticipation of litigation or for trial." FED. R.CIV.P. 26(b)(3). At-issue waiver can also apply to the protection afforded under the work-product doctrine. *Insurance Corp. of Ireland, Ltd. v. Board of Trustees of So. Ill. Univ.*, 937 F.2d 331, 334 n. 3 (7th Cir.1991); *A.O. Smith*, 1991 WL 192200, at *5.

█ In this case, Pyramid has waived protection under the work-product doctrine to the same extent that it has waived its attorney-client privilege by putting at issue the discussions between itself and its attorney and the advice Pyramid received based on these discussions. Thus, the scope of discovery for work-product materials will be identical to the above rulings concerning the attorney-client privilege. *See Insurance Corp. of Ireland, Ltd.*, 937 F.2d at 334 n. 3 (finding that plaintiff had waived both the attorney-client privilege and work-product protection by putting at issue its state of mind); *A.O. Smith Corp.*, 1991 WL 192200, at *5 (finding that plaintiffs had waived both the attorney-client privilege and work-product protection because defendants' asserted the statute of limitations defense which put at issue when plaintiffs discovered their injuries).

## III. *CONCLUSION*

For the foregoing reasons, defendants Siemens Industrial Automation, Inc. and Siemens Energy & Automation, Inc.'s (1) motion to compel Zavislak & Mann to comply with subpoena duces tecum is granted in part and denied in part and (2) motion to compel Pyramid to answer interrogatories and produce documents is granted in part and denied in part. All pending discovery disputes are to be resolved consistent with this order. Specifically, the court orders that:

1. Siemens' motion to compel Zavislak & Mann to testify at a deposition on the subject of communications that occurred between June 14, 1995 and May 14, 1996, concerning the alleged termination is granted. Siemens' motion to compel Zavislak & Mann to testify as to confidential communications concerning Pyramid's sale of the distributorship to Steiner or on other subjects that do not affect the statute of limitations defense is denied.

2. Siemens' motion to compel Pyramid to respond to Interrogatory # 1 is granted only to the extent that the communications relate to Pyramid's status as a franchisee and possible claim under the IFDA, but denied in all other respects.

3. Siemens' motion to compel Pyramid to respond to Interrogatory # 4 is granted only to the extent that the communications relate to the alleged termination of Pyramid's distributorship, but denied in all other respects.

4. Siemens' motion to compel Pyramid to respond to Interrogatory # 5 is denied.

5. Siemens' motion to compel Pyramid to respond to Document Requests # 1, # 2, # 3, # 6, # 7, and # 8 is granted only to the extent that the documents relate to communications concerning the alleged termination of the distributorship, but denied in all other respects.